UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DWAIN MCGINNIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:11-cv-02210-MPM-DGB |
| v. ) | |
| ) | |
| JOHN C. BONEWICZ, P.C., ) | |
| ) | |
| Defendant. ) | |

## MOTION TO COMPEL ARBITRATION

Defendant, John C. Bonewicz, P.C., by and through its undersigned attorneys, hereby moves this Honorable Court to compel arbitration of this matter pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") and in support of which, states as follows:

## INTRODUCTION

Plaintiff's Complaint alleges that Defendant left an offending voicemail on Plaintiff's answering machine that failed to identify the caller's identity and status as a debt collector in violation of 15 U.S.C. §1692 *et seq* (the "FDCPA"). See, Complaint ¶13, 14, attached as Exhibit A. Plaintiff's Complaint, however, is not properly brought before this court. The debt at issue, an account opened with CitiBank South Dakota, N.A. (the "Account") and subsequently sold to debt purchaser, Cach, LLC, is subject to a binding arbitration agreement (the "Agreement"). See, Bill of Sale, Attached as Exhibit B. The Agreement applies to any assignee or purchaser of the agreement as well as any employees, agents, or representatives of the same. Further, the Agreement provides that any claim made

by the Plaintiff, no matter "what legal theory they are based on or what remedy damages, or injunctive or declaratory relief)", is subject to mandatory, binding arbitration pursuant to the Federal Arbitration Act (the "FAA"). See, Credit Card Agreement, P. 10-14, attached as Exhibit C. Moreover, the Agreement specifically includes those actions related to debt collection. Ex. C, P. 11. Accordingly, this Court lacks subject matter jurisdiction over Plaintiff's claim and it should be dismissed.

## STANDARD

The statutory basis for a motion to compel arbitration derives from the Federal Arbitration Act, which permits a party to an arbitration agreement to petition the district court to compel arbitration in the manner provided for in the agreement. 9 U.S.C. §4. In order to determine whether a binding arbitration agreement exits, the court must look to the principals of state contract law. *Tinder v. Pinkerton Security*, 305 F.3d 728, 733 (7th Cir. 2002); *See also*, 9 U.S.C. §2 (mandating enforceability of valid written arbitration agreements). The FAA dictates that an arbitration clause in a "contract evidencing a transaction involving commerce…shall be valid, irrevocable, and enforceable save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. §2. The FAA embodies a broad federal policy favoring arbitration. *Shearson Am. Express, Inc. v. McMahon*, 482 U.S. 220, 225-26 (1987). Understandably, "the standard for demonstrating arbitrability is not high. The court's only role when presented with a question of arbitrability is to determine (1) whether a valid arbitration agreement

exists and (2) whether the scope of the parties' dispute falls within that agreement." *Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 866 (E.D. Wis. 2006) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.2d 1126, 1130 (9th Cir. 2000).

Undeniably, whether a valid arbitration agreement exists is a question of state contract law. *R.J. O'Brien & Assoc. v. Pipkin*, 64 F.3d 257, 260 (7th Cir. 1995); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995). Where a contract has subsequently been assigned to another, the assignee stands in the shoes of the assignors. *Tickanen*, 461 F.Supp. 2d at 868 (citing *Pollice v. National Tax Funding, L.P.* 225 F.3d 379, 414). Any doubts as to whether claims fall within the scope of the agreement must be resolved in favor of arbitration. *Tickanen*, 461 F. Supp. at 870 (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25).

I.   A VALID ARBITRATION AGREEMENT EXISTS

In determining the applicability of an arbitration agreement, the first inquiry to make is whether a valid arbitration agreement exists. *Tickanen,* 461 F. Supp. 2d at 866. The basic elements of any contract formation are offer, acceptance and consideration. *Id.* "A vendor, as master of the offer, may invite acceptance by conduct, and may propose limitations on the kind of conduct that constitutes acceptance. A buyer may accept by performing the acts the vendor proposes to treat as acceptance." *ProCd, Inc. v. Seidenberg*, 86 F.3d 1147, 1452 (7th Cir. 1996). These same concepts apply to a party that sends a proposed credit card agreement. Such was the situation in *Tickanen*, where a debtor argued that an arbitration agreement was invalid because the parties did not affix their signatures to the agreement.

*Tickanen,* 461 F. Supp. 2d at 866. The *Tickanen* Court rejected the plaintiff's argument explaining that offers on a "take-it-or-leave-it basis "are valid agreements for the applicability of the FAA. *Id.*; *Metro East Center for Cond. and Health v. Quest Comm. Int'l, Inc.*, 294 F.3d 924, 926 (7th Cir. 2002); *Hill v. Gateway 2000*, 105 F.3d 1147 (7th Cir. 1997).

Here, it is undisputed that Plaintiff owes a debt and Defendant is attempting to collect that debt from Plaintiff (the "Debt"). Ex. A., ¶11. The Debt that Defendant is attempting to collect is based upon purchases made by Defendant on a Sears Gold MasterCard, an account which is owned by CitiBank. Ex. B, P. 23. The debt arose from an agreement between Plaintiff and CitiBank (the "Agreement"). Ex. A, ¶11. Ex. B, Ex. C. Specifically, CitiBank and Plaintiff agreed that CitiBank would provide Plaintiff with credit on account on or about July 2, 2005. *Id.* That agreement contains an arbitration clause. Ex. C; ¶10-14. Further, it states that the "Agreement is binding on [Plaintiff] unless [Plaintiff] close[s] [his] account within 30 days after receiving the card and [he has] not used or authorized use of the card." Ex. C, P. 1. Plaintiff and Defendant agree that he made transactions on that Account from which the debt arose. Ex. A ¶12, Ex. B. In sum, there is no question that a valid arbitration clause exists.

II.    THE SCOPE OF THE PARTIES' DISPUTE FALLS WITHIN THAT AGREEMENT.

The final inquiry is whether the scope of the parties' dispute calls within the arbitration agreement. *Tickanen*, 461 F. Supp. 2d at 866. A reading of the terms of

the agreement in this case makes it clear that the inquiry should be answered in the affirmative. In relevant part, that agreement states as follows:

> "Agreement to Arbitrate: Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").
>
> \*\*\*
>
> "What Claims are subject to arbitration? All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability or interpretation of this Agreement and this arbitration provision. All claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law;…
>
> \*\*\*
>
> "Whose Claims are subject to arbitration? Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy."
>
> "What about debt collectors? … We and any assignee may seek arbitration on an individual basis of any Claim asserted by you, whether in arbitration or any proceeding, including a proceeding to collect a debt…"

See, Ex.B, (Exhibit II P. 7-9).

Here, a credit agreement exists between Plaintiff and Cach, as a purchaser and assignee under the agreement. Plaintiff defaulted on that agreement as a result of non-payment. Ex. A. ¶11, Ex. B. After default, CitiBank, sold the debt to debt purchaser Cach, LLC.  Ex. A. ¶11, Ex. B. Cach, LLC employed Defendant, a law firm, to aid in the collection of the debt. See, Exhibit D, Affidavit of JCB, ¶10. When

Cach purchased the debt, it stepped into Citibank's shoes to gain all of Citibank's contractual rights under the Agreement. *Ruva v. Mente*, 143 Ill. 2d 257, 270 (Ill. 1991) ( explaining that an assignment puts the assignee into the shoes of the assignor). The Agreement specifically provides that any claim made by Plaintiff against an agent, representative, and employee is subject to binding arbitration. Ex. C, P. 11. Clearly Defendant, as an employee of Cach, LLC, the debt purchaser, is a party covered by the agreement. Further, Plaintiff's claim is also clearly covered by the agreement, which specifically refers to debt collection as being covered by the arbitration provision. *Id.* Clearly, the contract from which the debt arose has bound the parties to mandatory arbitration of this matter. As a result, Defendant has met the second prong of the analysis explained in *Tickanen*, which requires that the scope of the parties' dispute falls within that agreement. *Tickanen,* 461 F. Supp. 2d at 866. Thus, there is no question that this Court should compel the arbitration of this matter.

  WHEREFORE, Defendant, John C. Bonewicz, P.C., by and through its undersigned attorneys, hereby prays that this Honorable Court enter an order referring this case to mandatory arbitration and for any other relief this Court deems just.

Respectfully Submitted,


By: /s/ Nicole M. Strickler
Nicole M. Strickler
Attorney No. 6298459
Messer & Stilp, Ltd.
166 W. Washington St., Suite 300
Chicago, IL 60602
312-334-3476
312-334-3434 (fax)
strickler@messerstilp.com


CERTIFICATE OF SERVICE

    I hereby certify that on October 24, 2011, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which will send notification of such filing to the following:

Michael S. Agruss
Krohn & Moss, Ltd.
10 N. Dearborn Street
3rd floor
Chicago, IL 60602
Tel. 323-988-2400 x235
Fax: 866-583-3695




By: /s/ Nicole M. Strickler
Nicole M. Strickler
Attorney No. 6298459
Messer & Stilp, Ltd.
166 W. Washington St., Suite 300
Chicago, IL 60602
312-334-3476
312-334-3434 (fax)
strickler@messerstilp.com