## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DWAIN MCGINNIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:11-cv-02210-MPM-DGB |
| | ) |
| JOHN C. BONEWICZ, P.C., | ) |
| | ) |
| Defendant. | ) |
| | ) |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

COMES NOW Plaintiff, DWAIN MCGINNIS ("Plaintiff"), through his attorneys, Krohn & Moss, Ltd., and files his Response in opposition to Defendant's, JOHN C. BONEWICZ, P.C. ("Defendant"), Motion to Compel Arbitration.

**I.   INTRODUCTION**

On September 1, 2011, Plaintiff filed her Verified Complaint against Defendant, alleging Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq. See* Plaintiff's Complaint; Document No. 1. In this action, Plaintiff alleged Defendant attempted to collect a consumer debt from Plaintiff. *See id.* at ¶ 11. Plaintiff's alleged debt owed arises from transactions for personal, family, and household purposes. *See id.* at ¶ 12. Defendant called Plaintiff and left a voice message, asking Plaintiff to call Defendant at 800-700-2106, which is a telephone number that belongs to Defendant. *See id.* at ¶ 13; *see also* Exhibit A to Plaintiff's Complaint. Defendant failed to disclose in subsequent communications that the calls were from a debt collector. *See id.* at ¶ 14; *see also* Exhibit A to Plaintiff's Complaint. Based on the foregoing facts, Defendant violated the FDCPA as follows:

      a. Defendant violated § 1692e of the FDCPA by using false, deceptive, and misleading representations in connection with the collection of any debt.
      b. Defendant violated § 1692e(10) of the FDCPA by using deceptive means in an attempt to collect a debt.
      c. Defendant violated § 1692e(11) of the FDCPA by failing to disclose in subsequent communications that the communication was from a debt collector.

*See id* at ¶ 15.

On October 25, 2011, Defendant filed its Motion to Compel Arbitration ("Motion"). *See* Document No. 8. In its Motion, Defendant erroneously argues that "this Court lacks subject matter jurisdiction over Plaintiff's claim." *See* Motion at 2. In coming to this erroneous conclusion, Defendant relies on a credit card agreement between Plaintiff and Citibank South Dakota, N.A. ("Card Agreement"), which contains an arbitration clause that Defendant asserts binds Plaintiff to arbitration for claims arising from the unlawful actions of third-party debt collectors, like Defendant. *See id.* As discussed *infra*, however, the arbitration clause does not apply to Defendant because Defendant is an unintended third-party and was not contemplated in the Card Agreement.

## II.    LEGAL STANDARD

Whether claims arising from the unlawful conduct of a third-party debt collector, like Defendant, is arbitrable turns on whether the parties agreed to the same. It is well-settled in the Seventh Circuit that:

> [T]he party who has refused to arbitrate because he believes in good faith that his agreement does not bind him to arbitrate, *or that the agreement is not applicable to the controversy,* is protected by the provision of the law which requires the court to examine into the merits of such a claim.

*Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 873 (7th Cir. 1985) (emphasis in original) *quoting* Cohen & Dayton, *The New Federal Arbitration Law,* 12 Va.L.Rev. 265, 267 (1926); *see also Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH,* 585 F.2d 39, 44–45 (3d Cir.1978); *Korody*

*Marine Corp. v. Minerals & Chemicals Philipp Corp.,* 300 F.2d 124, 125 (2d Cir.1962) (per curiam). As discussed *infra*, the arbitration clause contained in the Card Agreement is not applicable to the controversy in the case at bar.

### III.   ARGUMENT

#### A.   Defendant Misstates Key Language Found in the Card Agreement.

Defendant misstates key language in the Card Agreement to erroneously argue that "debt collectors" were contemplated in the arbitration clause.  In clearly misstating the Card Agreement, Defendant incorrectly quotes:

> What about debt collectors? … We and any assignee may seek arbitration on an individual basis of any Claim asserted by you, whether in arbitration or any proceeding, including a proceeding to collect a debt…

Defendant's Motion at 5.  Whether it was a typographical error on the part of Defendant or an intentional misrepresentation of the facts, the above alleged quotation severely misstates key language of the Card Agreement.  According to the above quoted section, it would appear that "debt collectors" like Defendant were contemplated in the Card Agreement.  However, this is simply untrue.  One look at the actual Card Agreement reveals the truth.  In actuality, the Card Agreement reads as follows:

> **What about debt <u>collections</u>?**  We and anyone to whom we **assign** your debt will not initiate an arbitration proceeding to collect a debt from you unless you assert a Claim against us or our **assignee**.  We and any **assignee** may seek arbitration on an individual basis of any Claim asserted by you, whether in arbitration or any proceeding, including a proceeding to collect a debt….

*See* Exhibit B to Defendant's Motion; Document 8-4 at 4 (internal page 11) (emphasis added). Clearly, the difference in even one word makes a huge difference as this is the key language that conclusively refutes Defendant's erroneous conclusion.  Unlike Defendant's erroneous recitation of

the Card Agreement that seemingly includes "debt collectors," the Card Agreement actually has no reference to third-party debt collectors like Defendant.  In fact, this same section makes clear that the only parties contemplated in the Card Agreement were the original creditor and the "assignee" of the account, which in this case is CACH, and *not* Defendant.  In other words, this section only addresses the collection activities undertaken by the original creditor or assignees like CACH.  It does not include debt collectors, as Defendant erroneously argues in its Motion.

Defendant also makes an unsuccessful and disingenuous attempt to assert that "Cach, LLC employed Defendant, a law firm, to aid in the collection of the debt," and thus, Defendant is a beneficiary of the arbitration clause as an "employee" of CACH.  Defendant's Motion at 5.  Specifically, the Card Agreement reads:

> **Whose Claims are subject to arbitration?**   Not only ours and yours, but also Claims made by or against anyone connected with us or you or claims through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

*See* Exhibit B to Defendant's Motion; Document 8-4 at 4 (internal page 11).  Defendant takes a blind leap to conclude that the "employee" contemplated in this section would include Defendant because CACH "**employed** Defendant, a law firm, to aid in the collection of the debt."  Defendant's Motion at 5 (emphasis added).  This awfully strained interpretation of this section of the Card Agreement is equally nonsensical as saying that the defense attorney in the case at bar, Ms. Nicole Strickler, is an "employee" of Defendant, John C. Bonewicz, because Defendant "employed" her to represent Defendant in this case.[1]   Clearly, the fact that Ms. Strickler, as an attorney, represents Defendant does not make her an employee of Defendant.  Likewise, the fact that CACH employed the services

---

[1] Merriam-Webster Dictionary defines employee as "one employed by another usually for wages or salary and in a position below the executive level."  *See* www.merriam-webster.com/dictionary/employee.

PLAINTIFF'S RESPONSE TO DEFENDANT MOTION TO COMPEL ARBITRATION                4

of Defendant, a debt collector, to collect on the underlying debt, does not make Defendant an employee of CACH. Accordingly, Defendant's nonsensical reasoning should be rejected. The intended beneficiary of the arbitration clause of the Card Agreement is CACH, as they are the assignees of the account that originated from Citibank.

**B.     Plaintiff did not Agree to Arbitrate his Dispute with Defendant.**

The Court should deny Defendant's Motion as the parties did not agree to arbitrate the unlawful debt collection claims pled by Plaintiff which are clearly collateral to the Card Agreement. *See Mitsubishi Motors Corp.v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Since the decision to arbitrate is contractual, and Plaintiff did not agree to have any claims related to Defendant or its unlawful collection efforts arbitrated, Plaintiff is entitled to have this Court resolve his dispute. *See Sphere Drake Insurance Ltd. v. All American Insurance Co.*, 256 F.3d 587, 590 (7th Cir. 2001) ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *see also United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

**C.     Plaintiff's FDCPA Claims are Collateral to the Arbitrable Claims in the Arbitration Clause of the Card Agreement.**

At its most fundamental level, the arbitration clause must be analyzed within the context of the parties' agreement and the claims at issue pled by Plaintiff. This analysis unquestionably reveals that the alleged unlawful debt collection activity in the case at bar did not arise from any issue pertaining to the parties' underlying agreement. Further, nowhere does the arbitration clause or the Card Agreement speak of unlawful conduct by Defendant, in violation of the FDCPA. Both are equally silent to any reference regarding the type of conduct detailed in Plaintiff Complaint in the instant case at bar.

A case from the United States Second Circuit Court of Appeals, *Collins & Aikman Products Co. v. Building Systems, Inc.*, illustrates that the unlawful debt collection conduct of Defendant must be deemed to fall outside the arbitration clause. *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16 (2d Cir. 1995). In *Collins*, the Second Circuit analyzed whether particular claims fell within the scope of an arbitration clause similar to the case at bar which covered any claim or controversy arising out of or relating to the agreement. *Collins*, 58 F.3d at 18. In assessing whether the allegations were within the scope of the arbitration provision, the court found that the law does not require parties to arbitrate when they have not agreed to do so. *Id*. at 19 *quoting Volt Info Sciences, inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989). Further, in determining whether a claim is within the scope of the arbitration clause, the court looked to the conduct alleged in the complaint itself. *Id*. at 20-21. "*If the allegations underlying the claims 'touch matters' covered by the parties' ... agreements*, then those claims must be arbitrated, whatever the legal labels attached to them." *Id*. at 21, *quoting*, *Genesco, Inc. v. T. Kakiuchi Co., Ltd.*, 815 F.2d 840, 846 (2d Cir. 1987) (emphasis in original). The *Collins* court held:

> [I]f the arbitration clause is broad, there arises a presumption of arbitrability; **if, however, the dispute is in respect of a matter that, on its face, is clearly collateral to the contract**, then a court should test the presumption by reviewing the allegations underlying the dispute and by asking whether the claim alleged implicates issues of contract construction or the parties' rights and obligations under it. If the answer is yes, then the collateral dispute falls within the scope of the arbitration agreement; **claims that present no question involving the construction of the contract, and no questions in respect of the parties' rights and obligations under it, are beyond the scope of the arbitration agreement**.

*Id*. at 23 (emphasis added).

### D.  The Arbitration Clause Does Not Encompass Plaintiff's FDCPA Claims in the Instant Action.

As detailed *supra*, Defendant is not the intended beneficiary of the arbitration clause of the Card Agreement.  Even assuming, *arguendo*, that Defendant was the intended beneficiary, the arbitration clause would still not apply to the claims alleged in Plaintiff's Complaint.  Although Defendant states in conclusory fashion that the arbitration agreement encompasses the issues in dispute, it quite clearly does not.  Plaintiff alleges unlawful conduct by Defendant, which ultimately led to Plaintiff's cause of action for violations of the FDCPA.  *See* Plaintiff's Complaint; Document No. 1.  On the other hand, the arbitration clause provides for arbitration of claims as follows:

> **What Claims are subject to arbitration?**  All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision.  All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek.  This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law….

*See* Exhibit B to Defendant's Motion; Document 8-4 at 4 (internal page 10).  Nowhere in the language of the provision is there any indication that unlawful debt collection activities by a third-party debt collector would be subject to arbitration.

Plaintiff's cause of action is about Defendant's unlawful conduct.  Had Plaintiff filed a case against Defendant contesting the amount of debt owed or Defendant's refusal to remove a disputed charge, such a claim would arise from the agreement, and thus be subject to arbitration.  Similarly, had Defendant filed a claim against Plaintiff for non-payment, such would also fall within the scope of the arbitration clause.  However, Plaintiff's Complaint does not present a issue involving the parties' rights and obligations under the Card Agreement.  But for Defendant's violation of the law,

no Complaint would have been filed.  Further, Defendant's conduct was not contemplated at the time the Card Agreement was entered into as there was no way for Plaintiff to anticipate that Defendant would violate the law and Plaintiff's rights in its attempt to collect on a debt.  Thus, Defendant's actions giving rise to Plaintiff's Complaint clearly fall beyond the scope of the arbitration provision.

If this Court were to accept Defendant's interpretation, any action Defendant takes against Plaintiff to try and collect this debt would be subject to binding arbitration.  Under Defendant's interpretation, if Defendant's employee shot Plaintiff in the leg in an attempt to collect the alleged debt, any subsequent claim brought by Plaintiff for personal injuries could only be brought through arbitration due to the "broad" reach of the arbitration clause.  As nonsensical as it would be to require Plaintiff to arbitrate a claim for a gunshot wound, it would be equally nonsensical to allow Defendant to shield itself under the so-called "broad" language of the arbitration clause by engaging in other unlawful collection activities.   This Court should not be required to weigh the severity of the unlawful debt collection activity to determine if the unlawful action is subject to arbitration. Rather, as neither the Card Agreement nor the arbitration clause itself speaks to unlawful debt collection activities, any unlawful debt collection activity must be deemed as collateral to the Card Agreement and not subject to arbitration.

      **E.**      **The Arbitration Agreement is Unenforceable Because the Text of the FDCPA Establishes that Congress Contemplated a Judicial Forum for the Resolution of FDCPA Claims.**

As detailed *supra*, it is clear that there was no agreement to arbitrate any claims between Plaintiff and Defendant.  Even assuming, *arguendo*, this Court finds that the parties agreed to arbitrate, it must also consider whether any federal statute or policy renders the claims nonarbitrable. *See Mitsubishi Motors Corp v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628 (1985); *see also*

*First Options of Chicago, Inc., v. Kaplan,* 514 U.S. 938, 944 (1995). The FDCPA does exactly that. By repeatedly using the word "court" and by including specific jurisdictional provisions within the statute, Congress specifically directed that FDCPA claims should be resolved in a judicial forum.

The presumption of arbitrability is overcome by a clear declaration of congressional intent that FDCPA claims should be brought in a court of law. The party opposing arbitration meets its burden by showing that Congress intended in a separate statute to preclude a waiver of judicial remedies or that such a waiver of judicial remedies inherently conflicts with the underlying purposes of that other statute. *See Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226-27 (1987). Congressional intent is deducible from a statute's text and legislative history or from an inherent conflict between arbitration and the statute's underlying purposes. *Id.* at 227. *See also Mitsubishi*, 473 U.S. at 628 ("Having made the bargain to arbitrate, the party should be held to it **unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue**") (emphasis added).

For example, in *Alexander v. U.S. Credit Management, Inc.*, 384 F. Supp. 2d 1003 (N.D. Tex. 2005), the court declared the disputed arbitration clause void under the plain language of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq.*, because the "CROA's non-waiver of rights provision, combined with its proclamation of a consumer's right to sue, represent precisely the expression of congressional intent required by *Mitsubishi* and its progeny." 384 F. Supp. 2d at 1011. Applying standard legal usage, it emphasized that when a statute identifies "a right to sue," it is not simply providing a right "to some form of dispute resolution" and that "the act of suing in a court of law is distinctly different from arbitration":

> One cannot satisfy the right to sue protected by CROA by replacing it with an opportunity to submit a dispute to arbitration. *See generally Morrison v. Colo. Permanente Med. Group, P.C.,* 983 F.Supp. 937, 944 (D.Colo.1997) ("[C]ases and statutes discuss consistently the

> terms 'arbitration' and 'civil action' in a manner that leaves no doubt that arbitration is a creature separate from, and not just a form of, a civil action."). There is no evidence that Congress intended courts to interpret "right to sue" in a way that does not conform with standard legal usage.
>
> To sue is "[t]o institute a lawsuit against (another party)." Black's Law Dictionary 1473 (Bryan A. Garner ed., 8th ed., 2004). For "lawsuit," Black's directs us to "suit," *id.* at 905, which is defined: "[a]ny proceeding by a party or parties against another *in a court of law.*" *Id.* at 1475 (emphasis added). "Suit" is "[a]lso termed *lawsuit; suit at law ....*" *Id.* "Litigation," an oft-used synonym for bringing suit, is defined: "The process of carrying on a lawsuit ..., [a] lawsuit itself...." *Id.* at 952.
>
> By contrast, "arbitration" is "a method of dispute resolution involving one or more neutral third parties who are usu[ally] agreed to by the disputing parties and whose decision is binding...." *Id.* at 112; *see also General Motors Corp. v. Pamela Equities Corp.,* 146 F.3d 242, 246 (5th Cir.1998) ("Arbitration is the reference of a particular dispute to an impartial third person chosen by the parties to a dispute who agree, in advance, to abide by the arbitrator's award issued after a hearing at which both parties have an opportunity to be heard."). Arbitration is one of several mechanisms of "alternative dispute resolution," which is "[a] procedure for settling a dispute *by means other than litigation,* such as arbitration or mediation." *Id.* at 86 (emphasis added).
>
> Corpus Juris Secundum emphasizes that "[a]rbitration is not a judicial proceeding either at common law or under statutes. It is a proceeding separate from litigation based upon its underlying purpose of encouraging dispute resolution *without resort to the courts,* and may be characterized as an alternative to litigation." 6 C.J.S. Arbitration § 2 (June 2005) (emphasis added) (citations omitted).

*Id.*

The court anticipated, and rejected, the argument that "by agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits them to their resolution in an arbitral, rather than a judicial forum." *Id.* at 1012. It explained that "such substantive rights are only suitably addressed in arbitration in the absence of congressional intent 'to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Id.* ("Having found CROA

to express such an intent, to then argue that a congressionally mandated 'right to sue' is met equally either by litigation in court or by submittal to arbitration is to obliterate the distinction between these fora. This Court interprets a 'right to sue,' as contrasted with a right to make a claim, as a right to bring litigation *in court.*") (emphasis in original). Notably, legislative history reveals a direct link between this "right to sue" and the jurisdictional provision of the CROA. *See id.*

*Alexander* makes clear that a federal statute or policy can render a claim nonarbitrable if the language of the statute shows that Congress contemplated a judicial, as opposed to an arbitral, forum. The FDCPA contains clear language to that effect. Section 1692k addresses civil liability and mirrors the language of the CROA's jurisdictional provision scrutinized in *Alexander*. It includes numerous references to "the court." *See, e.g.*, 15 U.S.C. § 1692k(a)(3) ("together with a reasonable attorney's fee as determined by the court"); *id.* ("[o]n a finding by the court"); *id.* ("the court may award"); *id.* § 1692k(b) ("Factors considered by court"); *id.* ("the court shall consider"). In addition, the FDCPA contains a jurisdictional provision that expressly states that "[a]n action to enforce any liability created by this subchapter may be brought **in any appropriate United States district court** without regard to the amount in controversy, or **in any other court of competent jurisdiction**, within one year from the date on which the violation occurs." *Id.* § 1692k(d) (emphasis added). These repeated references to "the court" are important. Technical compliance with statutory language is required under rules of statutory interpretation.

## IV.   CONCLUSION

As discussed *supra*, Defendant is not the intended beneficiary of the arbitration clause in the Card Agreement. As such, Defendant is not entitled to even assert enforcement of the arbitration clause. Furthermore, the filing of Plaintiff's Complaint before this Court is proper as the allegations

in Plaintiff's Complaint are beyond the scope of the arbitration clause. Accordingly, this Honorable Court should deny Defendant's Motion to Compel Arbitration.

Dated: November 10, 2011           RESPECTFULLY SUBMITTED,

                                            KROHN & MOSS, LTD.

                                By: /s/ Michael S. Agruss

                                      Michael S. Agruss
                                      KROHN & MOSS, LTD.
                                      10 N. Dearborn St., 3rd Floor
                                      Chicago, IL 60602
                                      Tel: 323-988-2400 x235
                                      Fax: 866-620-2956
                                      magruss@consumerlawcenter.com
                                      Attorney for Plaintiff,
                                      DWAIN MCGINNIS

## PROOF OF SERVICE

I am employed in Chicago, Illinois.  I am over the age of 18 and not a party to the within action.  My business address is 10 N. Dearborn St., 3rd Floor, Chicago, IL 60602

On November 10, 2011, I served the following documents: **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**

On the parties listed below:

| | |
|---|---|
| Nicole M. Strickler<br>MESSER & STILP, LTD,<br>166 W Washington, Ste, 300<br>Chicago, IL 60602<br>strickler@messerstilp.com | Attorney for Defendant,<br>JOHN C. BONEWICZ, P.C. |

By the following means of service:

[X]   **BY ELECTRONIC SERVICE:** the documents above were delivered electronically through the Court's ECF/PACER electronic filing system, as stipulated by all parties to constitute personal service.

[X]   **BY ELECTRONIC MAIL:** I transmitted the document(s) listed above electronically to the e-mail addresses listed above.  I am readily familiar with the firm's Microsoft Outlook e-mail system, and the transmission was reported as complete, without error.

[X]   **BY MAIL:** I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.  I am readily familiar with the firm's practice for collection and processing correspondence for mailing.  Under that practice, this document will be deposited with the U.S. Postal Service on this date with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]   **FEDERAL:** I declare under penalty of perjury under the laws of Illinois that the above is true and correct.

Executed on November 10, 2011, at Chicago, Illinois

By: /s/ Michael S. Agruss

Michael S. Agruss